KENNETH J. MASAT and CAROLE MAGAHA BARNES (Formerly Known as LANA C. MASAT), ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Masat v. Commissioner
Docket Nos. 7605-80, 11192-81, 11560-81.
United States Tax Court
T.C. Memo 1984-313; 1984 Tax Ct. Memo LEXIS 362; 48 T.C.M. (CCH) 317; T.C.M. (RIA) 84313; June 20, 1984. *362 Held:
(1) H and W may not deduct the cost of premiums paid for flight officer's disability insurance. (2) Reimbursed flight-training expenses are not deductible. Manocchio v. Commissioner,78 T.C. 989 (1982), affd. 710 F.2d 1400 (9th Cir. 1983), followed. (3) H and W have not proven that H incurred any deductible expenses in attending union meetings. (4) H and W may not deduct the cost of contact lenses and aviator sunglasses; such expenses are personal in nature and nondeductible under sec. 262, I.R.C. 1954. (5) H and W have not proven that H incurred any deductible unreimbursed employee business expenses. (6) H's home improvement business was an activity not engaged in for profit. Accordingly, expenses are deductible only to the extent allowed under sec. 183, I.R.C. 1954. (7) Deductibility of W's claimed business expenses determined. (8) Amount of allowable investment tax credit determined. In 1977, H and W are subject to recapture of investment tax credit. (9) Deductibility of H and W's claimed farm expenses determined. (10) Long-term capital loss claimed in 1976 in connection with a monetary fund is not deductible because H and W have not proven they sustained loss in 1976. *363 (11) Long-term capital loss claimed in 1976 and 1977 in connection with a limited partnership is not deductible because H and W have failed to establish any basis in such limited partnership in such years. (12) Long-term capital loss claimed in 1976 and 1977 in connection with a franchise distributorship is not deductible because H and W have failed to establish that they sustained any loss in such years. (13) Deductibility of H and W's miscellaneous deductions for 1976 and 1977 determined. (14) H and W are liable for additions to tax under sec. 6653(a), I.R.C. 1954, for negligence for 1976; H is liable for such addition for 1977. Kenneth J. Masat and Carole M. Barnes, pro se. David A. Hampel, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Addition to Tax
Sec. 6653(a)
Docket No.
Petitioner
Year
Deficiency
I.R.C. 1954 [2]
7605-80
Kenneth J. Masat
1976
$14,190.70
$709.54
and Carole Magaha Barnes
11192-81
Kenneth J. Masat
1977
10,571.80
528.59
11560-81
Carole Magaha Barnes
1977
6,595.12
329.75
After concessions, the issues for decision are: (1) Whether the *364 petitioners are entitled to deductions for 1976 and 1977 for premiums paid for flight officer's disability insurance; (2) whether the petitioners are entitled to a deduction for flight-training expenses in 1976 to the extent that they were reimbursed for such expenses by the Veterans Administration; (3) whether the petitioners are entitled to a deduction in 1976 for expenses incurred in traveling to union meetings; (4) whether the petitioners are entitled to a deduction in 1976 for the cost of contact lenses and aviator sunglasses used by the petitioner; (5) whether the petitioners are entitled to any deductions for employee business expenses for 1976 or 1977; (6) whether the petitioners are entitled to any deductions for losses in connection with the petitioner's alleged home improvements business for 1976 or 1977; (7) whether the petitioners are entitled to certain deductions claimed in connection with Ms. Barnes' craft and gift shop business for 1976 and 1977; (8) whether the petitioners are entitled to any investment tax credits for 1976 and 1977, and if so, whether they are liable for investment tax credit recapture in 1977; (9) whether the petitioners are entitled to various *365 deductions in 1976 and 1977 for farm related expenses; (10) whether the petitioners are entitled to a long-term capital loss deduction in connection with a monetary fund for 1976; (11) whether the petitioners are entitled to a long-term capital loss deduction in connection with a limited partnership for 1976 or 1977; (12) whether the petitioners are entitled to a long-term capital loss deduction in connection with a franchise distributorship for 1976 or 1977; (13) whether the petitioners are entitled to various miscellaneous deductions for 1976 and 1977; and (14) whether the petitioners in 1976 and the petitioner in 1977 are liable for additions to tax under section 6653(a) for negligence. [3] *366 GENERAL FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Kenneth J. Masat and Carole Magaha Barnes, were residents of Texas at the time they filed their petitions in this case. During 1976, they were husband and wife and filed a joint Federal income tax return for 1976 with the Internal Revenue Service Center, Austin, Tex. During 1976, they lived in a house located on McMillian Drive in Tyler, Tex.; during 1977, Ms. Barnes continued to live in such house. In 1977, they filed two substantially identical amended joint returns for 1976; each return claimed an overpayment of $1,275.44. Later in 1977, they wrote a letter to the Internal Revenue Service requesting that the amended returns be disregarded and that their original return be considered as their return for 1976. On August 12, 1977, the petitioners were divorced and both filed individual Federal income tax returns for 1977. Mr. Masat will sometimes be referred to as the petitioner, and Ms. Barnes will be referred *367 to by that name even though she may have been known as Mrs. Masat at the time of the occurrence of some of the events. Issue 1. Disability Income Insurance
FINDINGS OF FACT During 1976 and 1977, the petitioner was employed as a pilot by Continental Airlines (Continental). During 1976, he flew out of Dallas-Fort Worth Regional Airport (DFW). During 1977, he flew out of several cities including Dallas, El Paso, and Houston, Tex. In 1976, the petitioners paid $639 for flight officer's disability income insurance policies. In 1977, the petitioner paid $434.21 for such insurance, and Ms. Barnes paid $178.74 for such insurance. Such amounts were deducted on the petitioners' 1976 and 1977 returns. The petitioner was the owner of the insurance policies, and their purpose was to replace his income in the event he was disabled. Such policies did not contain restrictions on the petitioners' use of any proceeds.The Commissioner disallowed the deductions for both years in full. OPINION The first issue for decision is whether the petitioners are entitled to deductions for 1976 and 1977 for premiums paid for flight officer's disability insurance.The petitioners have the burden of disproving *368 the Commissioner's determination. Rule 142(a), Tax Court Rules of Practice and Procedure[4]; Welch v. Helvering,290 U.S. 111 (1933). Section 162 provides a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including the trade or business of an employee. McGowan v. Commissioner,67 T.C. 599, 611-612 (1976); Primuth v. Commissioner,54 T.C. 374, 377 (1970). Section 212 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year for the production or the collection of income, or for the management, conservation, or maintenance of property held for the production of income. The petitioners contend that the expense of disability insurance is directly related to the petitioner's trade or business as a pilot. Their argument is apparently that his health is an asset and that the expense of protecting that asset is deductible under section 162 or 212. We previously considered the deductibility of disability insurance in Blaess v. Commissioner,28 T.C. 710, 713-717 (1957), where we held that *369 the expense of such insurance is not deductible where the proceeds from such insurance were designed to compensate the taxpayer for loss of earnings. The holding of Blaess is dispositive of the petitioners' arguments in the present case. Accordingly, we hold that the petitioners may not deduct the cost of premiums paid for flight officer's disability insurance. Issue 2. Flight-Training Expenses
FINDINGS OF FACT In 1976, the petitioner attended a flight-training course which maintained and improved skills required in his trade or business. He incurred a total of $7,019 for the course and related traveling expenses. He was reimbursed by the Veterans Administration (VA) in the amount of $5,468.85. On their 1976 return, the petitioners deducted $7,019 for "business required training," and they did not report as income the amount the petitioner was reimbursed by the VA. In his notice of deficiency, the Commissioner disallowed all of the flight-training expenses. The Commissioner subsequently modified his position and now maintains that to the extent the petitioner was reimbursed by the VA, the flight-training expenses are not deductible. OPINION The second issue for decision is *370 whether the petitioners are entitled to a deduction for flight-training expenses in 1976 to the extent that the petitioner was reimbursed for such expenses by the VA. This issue is controlled by our decision in Manocchio v. Commissioner,78 T.C. 989 (1982), affd. 710 F.2d 1400 (9th Cir. 1983), where we held that such reimbursed expenses are not deductible. Accordingly, we sustain the Commissioner's determination, as modified, on this issue. [5]
Issue 3. Union Meetings Travel Expenses
FINDINGS OF FACT During 1976, the petitioner was a member of the Airline Pilots Association. On their 1976 return, the petitioners deducted as union dues the amounts of $456 and $432 for 12 trips by car from Tyler to Dallas, Tex., made by the petitioner to attend monthly union meetings. The Commissioner allowed the union dues, but disallowed the costs of such trips in full. OPINION The third issue for decision is whether *371 the petitioners are entitled to a deduction in 1976 for expenses incurred in traveling to union meetings. In an effort to establish that he incurred travel expenses in attending union meetings in 1976, the petitioner introduced into evidence his pilot flight schedule and a calendar. Also intoduced into evidence in order to prove other deductions was the petitioner's flight log. The pilot flight schedule shows 11 union meetings during 1976; the calendar shows 15 such meetings. The Commissoner points out that the petitioner's flight log shows that on one occasion the petitioner was out of town on the day of a union meeting. The petitioners concede that the documents introduced into evidence conflict and have modified their position to assert that during 1976 the petitioner attended 10 union meetings. However, there is more than one discrepancy between what the petitioners assert and what their records indicate. Addording to the petitioner's flight log, of the 11 union meetings listed on his pilot flight schedule, 2 meetings occurred on the same day that he either flew out of or flew into DFW. Of the 15 union meetings listed on the petitioner's calendar, 9 coincided with one of *372 the petitioner's flights out of or into DFW. These conflicts show that the reliability of the petitioner's records is extremely questionable. Furthermore, on brief, the petitioners assert that whether or not the petitioner's travel to union meetings coincided with his commuting to or from work, such fact does not affect the deductibility of his travel expenses. Thus, neither the petitioner's records nor the assertions in their brief recognize the distinction between business travel expenses and commuting. The expense of commuting is clearly not deductible. Commissioner v. Flowers,326 U.S. 465 (1946); Hubbart v. Commissioner,4 T.C. 121 (1944). Thus, because the petitioner's records contradict each other and because the petitioners have refused to differentiate between nondeductible commuting expenses and deductible business travel expenses, we conclude that they have failed to carry their burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). In addition, we are unable to ascertain any basis for the application of the rule in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). In Cohan, there was some basis on which to estimate the taxpayer's expenses. In the present *373 case, there is no such basis. See Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957). The petitioners have failed to prove that the petitioner incurred any expense, in addition to the expense of commuting, because of his attendance at union meetings. Thus, we sustain the Commissioner's determination on this issue. Issue 4. Professional Equipment
FINDINGS OF FACT On their 1976 return, the petitioners deducted, as professional equipment and supplies, $245 for contact lenses and $60 for aviator sunglasses. The Commissioner disallowed such expenses in full. OPINION The fourth issue for decision is whether the petitioners are entitled to a deduction for professional equipment and supplies in 1976 consisting of the cost of contact lenses and aviator sunglasses used by the petitioner. The Commissioner contends that amounts spent for contact lenses and glasses are deductible, if at all, under section 213. However, he points out that, in this case, the amount expended does not exceed 3 percent of the petitioners' adjusted gross income and that, under section 213, such amounts are not deductible.The petitioners seek to deduct the cost of contact lenses and aviator sunglasses as *374 a business expense. They argue that the petitioner has an obvious need for vision correction and also that the contact lenses expense is "justified on the basis of personal appearance and image expected of an airline pilot." The petitioner did not testify as to how the contact lenses and aviator sunglasses were necessary to his profession other than to assert that the contact lenses contributed to enhancing his personal appearance. The petitioner was wearing his contact lenses at trial. Expenses which are so inherently personal in nature and which represent items that are used for both personal and business purposes are not deductible as business expenses. Bakewell v. Commissioner,23 T.C. 803 (1955). Consequently, the petitioners have failed to prove that they are entitled to a deduction for the cost of contact lenses and aviator sunglasses. Issue 5. Employee Business Expenses
FINDINGS OF FACT During the years in issue, Continental reimbursed the petitioner for certain travel expenses. Reimbursement was calculated on the basis of how many hours he was away on a particular trip. Continental paid for his hotel expenses. On their 1976 return, the petitioners claimed as a deduction *375 $744 for unreimbursed travel expenses incurred with respect to the petitioner's employment with Continental. In their petition, they claimed a larger amount, $2,599.45. On his 1977 return, the petitioner claimed $790 for such expenses. In his petition, he claimed additional unreimbursed employee expenses for 1977 of $475. On her 1977 return, Ms. Barnes claimed $526 for such expenses. The Commissioner disallowed all such expenses for both years. During 1976, the petitioner drilled two weekends with the U.S. Naval Reserve in Dallas. On their 1976 return, the petitioners claimed an employee business expense deduction in connection with the petitioner's employment in the Naval Reserve. They deducted $80 for meals and lodging and $84 for automobile expenses. The Commissioner disallowed such deductions in full. OPINION The fifth issue for decision is whether the petitioners are entitled to any deductions for employee business expenses for 1976 or 1977. First, the Commissioner argues that section 162(a)(2) allows as a deduction reasonable and necessary travel expenses incurred by the taxpayer in pursuit of business while away from home and that with respect to some expenses, the petitioner *376 was not away from home. During 1976, as a pilot for Continental, the petitioner flew out of DFW. During 1977, he flew out of various cities, including Dallas, but he also flew out of El Paso and Houston for limited periods. Thus, the Commissioner argues that the petitioner's tax home for 1976 was Dallas and that some of the expenses were incurred in Dallas; the Commissioner suggests that for 1977, the petitioner has failed to establish where his tax home was. Second, the Commissioner contends that the petitioners' claimed employee business expenses are not deductible bacause they have failed to satisfy the substantiation requirements of section 274.Third, the Commissioner maintains that the petitioner's records are insufficient to show that he incurred deductible business expenses which were not reimbursed by Continental. The petitioners contend that because of the nature of an airline pilot's job, he is always away from home, and they contend that the petitioners' employee business expenses are adequately substantiated by the records they submitted. In order to substantiate the alleged unreimbursed travel expenses incurred with respect to the petitioner's employment with Continental *377 and the Naval Reserve, the petitioners introduced into evidence the petitioner's flight log for the years in issue. The log shows expenditures for meals, taxi, telephone, and miscellaneous. The petitioner testified that generally the telephone calls which were recorded on the flight log were personal calls to his family which he deducted because Continental did not pay for them. As an airline pilot, the petitioner did not work a 9-to-5 day. Often, a flight on which he was working left DFW in the late afternoon. Nevertheless, his flight log shows entries for breakfast, lunch, and dinner for each day he was away from Dallas. The petitioner testified that entries for breakfast were not necessarily for breakfast, but might be for "a snack meal or something." In addition, he testified that he occasionally ate meals while flying, but insisted that he did not record those meals in his flight log. The petitioner testified that he did not record his expenditures until sometime after a trip. At issue here is the credibility of the petitioner's records and testimony. The Commissioner points out that essentially the petitioners are claiming expenses for three meals for each 8-hour duty period *378 regardless of when during the day the petitioner began working. In addition, he argues that the petitioner testified that he ate some of his meals on board the aircraft. The petitioners insisted that they are not attempting to deduct such meals. However, as the Commissioner contends, they are thereby maintaining that on days when the petitioner ate a meal on board, he still expended amounts for three other meals. The Commissioner also points out that in their petitions, the petitioners are claiming substantial additional amounts as employee business expenses over what they claimed on their original returns. He argues that such fact tends to suggest that the petitioner's records were not relied on in filing the original returns and that it is questionable whether such records existed at the time the returns were filed. Finally, the Commissioner points out that the petitioner has admitted that most of the listed telephone expenses represent calls by him to his family at home and that the petitioners offered essentially no proof regarding the "miscellaneous" expenses which comprise an appreciable portion of the claimed employee business expenses. For their part, the petitioners contend *379 that the discrepancy between the employee business expenses claimed on their original returns and the larger amounts claimed in their petitions are due to the fact that they "customarily deducted $1 per hour gone for expenses rather than add up the entire year. For the years in question, Petitioner elected to compute the actual expenses after the IRS disallowed his customary figures." Based on careful consideration of the petitioners' records and testimony, we conclude such evidence is simply unworthy of belief. This Court is not bound to accept testimony at face value, even if uncontroverted, if it is inherently improbable or manifestly unreasonable. Quock Ting v. United States,140 U.S. 417, 420-421 (1891); Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court; Boyett v. Commissioner,204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court. The petitioners' records do not represent business expenses; they are a mixture of business expenses and personal expenses. In addition, we do not believe that all the expenses recorded were actually incurred. Accordingly, we hold that the petitioners are not entitled to deduct *380 any unreimbursed employee business expenses for 1976 or 1977 in connection with the petitioner's employment by Continental. With respect to the petitioners' employee business expenses incurred with respect to the petitioner's employment with the Naval Reserve, the Commissioner has modified his position with respect to the petitioner's transportation expenses. He would allow the petitioners to deduct that portion of the transportation costs which represents the cost of local transportation between the petitioner's job at Continental and his job with the Naval Reserve. The Commissioner would deny the remainder of the petitioner's transportation costs as nondeductible personal commuting expenses. The Commissioner also asserts that the petitioners' claimed employee business expenses for the petitioner's meals and lodging while on duty with the Naval Reserve in Dallas are nondeductible because for Federal tax purposes, the petitioner's home is in the vicinity of his principal place of employment, here Dallas, and thus, he was not "away from home" for purposes of section 162(a)(2). The petitioners, in order to support their contention that the petitioner did attend Naval Reserve drills, *381 state that, on one occasion when the petitioner went to Dallas for Naval Reserve duty, he arrived in Dallas at 6:00 a.m., drilled with the Navy from 8:00 a.m. to 4:00 p.m., and then proceeded to the DFW for a 6:00 p.m. flight. Clearly, on such occasion, the petitioner's only deductible expense was the travel expense between the Naval Reserve facility and DFW; the remainder of the petitioner's travel expenses are nondeductible commuting expenses. Curtis v. Commissioner,449 F.2d 225, 227 (5th Cir. 1971), affg. a Memorandum Opinion of this Court; Steinhort v. Commissioner,335 F. 2d 496, 503 (5th Cir. 1964), affg. on this issue a Memorandum Opinion of this Court. The petitioners have failed to prove any deductible travel expenses other than those allowed by the Commissioner. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Accordingly, we sustain the Commissioner's modified position as to such travel expenses. With respect to the petitioners' food and lodging expenses claimed in connection with the petitioner's employment with the Naval Reserve, we hold that the petitioners have failed to prove that they incurred such expenses. Rule 142(a); Welch v. Helvering,supra. The petitioner's *382 records reflect a consistent pattern of claiming expenses whenever expenses conceivably could have been incurred and do not support the petitioners' contention that such expenses actually were incurred. Issue 6. Minute Man Losses
FINDINGS OF FACT For approximately 3 weeks beginning in October 1976, the petitioner was out of work because of a strike against Continental. When the strike began, the petitioner did not know how long it would last. During the strike, he decided to start a home improvements business called Minute Man Home Improvement & Security (Minute Man). He had 500 business cards printed up, some of which his wife distributed. In addition, he had a separate business phone installed for Minute Man and had Minute Man listed in the local phone book during 1976 and 1977. After the strike, the petitioner returned to work for Continental, and he did not have much time to devote to Minute Man. In February 1977, the petitioner and Ms. Barnes separated.The petitioner thereafter moved into a house located at 6105 Woodcrest Avenue in Tyler, Tex. During 1977, he resided in the house on Woodcrest, and he spent some of his spare time fixing up the house. He worked on this house *383 as part of his Minute Man business. In 1978, he sold the house at a profit. During 1976 and 1977, the petitioner purchased various items for use in his home improvements business, including a radial saw and stand, workclothes, a shop vacuum, a ladder, an automobile hitch, several locks, and various small tools. He also purchased, in approximately November 1976, a 1976 Honda Accord for use in his business. For 1976, the petitioners reported $250 as income in connection with Minute Man. Such amount was paid to the petitioner by his wife for putting up some shelves at her place of business. This was the only work done with respect to Minute Man in 1976. On their 1976 return, the petitioners deducted $2,581.57 for depreciation, rent, insurance, telephone, business cards, consumable tools, mileage, and meals and lodging, as attributable to Minute Man. Thus, Minute Man showed a net loss of $2,331.57 for 1976. During 1977, the petitioner's Minute Man business had one job, other than the work done on the house on Woodcrest, building and putting up a sign at a small shopping area in Tyler called Strawberry Patch, for which he was paid $41.86. On their 1977 returns, the petitioner and *384 Ms. Barnes each reported income and deductions from Minute Man. The petitioner reported $20.93 in gross receipts and claimed $5,271.75 in deductions for depreciation, taxes on business and business property, repairs, travel, meals and lodging, advertising, auto, dues and publications, telephone, and supplies. Ms. Barnes reported $20.93 in gross receipts and claimed $1,963.73 in deductions for depreciation, repairs, travel, meals and lodging, telephone, and supplies. The Commissioner disallowed all deductions for 1976 and 1977 associated with Minute Man to the extent that such deductions exceeded gross receipts. OPINION The sixth issue for decision is whether the petitioners are entitled to any deductions for losses in connection with the petitioner's alleged home improvement business for 1976 or 1977. The petitioners contend that the petitioner's home improvement business activities were commenced and operated with the intent of making a profit. The Commissioner argues that it was not an activity engaged in for the purpose of making a profit and that, accordingly, the petitioners are not entitled to deductions for any expenditures related to such activity to the extent such expenditures *385 exceed the gross receipts from such activity. In the alternative, if we should hold that Minute Man was an activity engaged in for the purpose of making a profit, then the Commissioner argues that the petitioners have failed to substantiate, as to amount or deductibility, the expenses claimed as deductions in connection with Minute Man. If the petitioner's Minute Man activities were not carried on for profit, section 183(a) provides that no deduction attributable to Minute Man shall be allowed except as provided by section 183. Section 183(b)(1) provides that deductions which would be allowable without regard to whether the activity was engaged in for profit shall be allowed, and section 183(b)(2) provides that deductions which would be allowable only if the activity is engaged in for profit shall be allowed to the extent that the gross income from the activity exceeds the deductions otherwise allowable under section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as any activity other than one with respect to which deductions are allowable under section 162 or under paragraph (1) or (2) of section 212. An individual is engaged in an activity for profit *386 if he engaged in the activity "with the actual and honest objective of making a profit." Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). Although a reasonable expectation of profit is not required, an examination of all the facts and circumstances of each case must indicate that the taxpayer engaged in the activity with the objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner,supra;Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The regulations under section 183 (section 1.183-2(b)) provide a list of nine factors to be weighed in determining whether an activity is engaged in for profit. Such factors are derived principally from prior case law (see Benz v. Commissioner,63 T.C. 375, 382-383 (1974)) and include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying *387 on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of recreation or personal pleasure are involved. The issue is one of fact, and no single factor is determinative; all the facts and circumstances must be considered. Lemmen v. Commissioner,77 T.C. 1326, 1340 (1981); Allen v. Commissioner,72 T.C. 28, 34 (1979). An examination of these factors, in light of all the facts and circumstances of this case, makes it abundantly clear that the petitioners have not proven that the petitioner's Minute Man activities were engaged in for profit during the years in issue. Rather, the petitioner's own testimony, as well as the petitioners' contentions on brief, demonstrate that Minute Man was merely a vehicle through which the petitioners attempted to convert nondeductible personal expenses into deductible business expenses. The petitioner did not carry on his Minute Man activity in a businesslike manner. He testified that he was surprised that the listing that he took out in the local yellow pages *388 did not generate business. Nevertheless, he did not attempt to secure jobs for the business by other means. This failure to make such efforts was due to the fact that after the Continental strike was settled, he did not have much time to devote to Minute Man. In addition, his wife's distribution of some of the Minute Man business cards appears to have been similary unsuccessful in generating any business, perhaps with the exception of the petitioner's one job at Strawberry Patch in 1977. In February 1977, when the petitioner and Ms. Barnes separated, he moved into the house on Woodcrest.Thereafter, for the remainder of 1977, the Woodcrest house was his residence, and the business of Minute Man was to make improvements to his personal residence. The petitioner did not maintain complete and accurate books and records. His records for Minute Man consisted of two looseleaf pages composed sometime after the incurrence of the expenses which they record. The petitioner does not appear to have had any more experience in the home improvements business than the average homeowner. Nor did he apparently consult with any person who did have more experience. Part of the deductions claimed *389 in connection with Minute Man are transportation expenses between the petitioner's "primary" and "secondary" places of business. He designated his job as a pilot with Continental as his "primary" business and his activities in connection with Minute Man as his "secondary" business. By means of such designations, he is seeking to deduct the nondeductible commuting expenses incurred in traveling from his residence to his job with Continental, as well as his personal living expenses.Such expenses are quite clearly not deductible. Sec. 262; Commissioner v. Flowers,326 U.S. 465 (1946); Ford v. Commissioner,29 T.C. 499, 504 (1957). For the foregoing reasons, we hold that Minute Man was an activity not engaged in for profit and that, thus, the petitioners are not entitled to any deduction for losses incurred in connection with Minute Man for 1976 and 1977 to the extent that such losses exceed the gross receipts from Minute Man. Such holding makes it unnecessary to discuss the Commissioner's alternative contention. Issue 7. Patchwork Place Deductions
FINDINGS OF FACT In October 1976, Ms. Barnes started a crafts and gift shop called Patchwork Place. The shop was located in the Strawberry *390 Patch business area in Tyler and bought and sold crafts made by East Texans and also sold craft supplies. In 1976, she paid Minute Man $250 to install some shelves at Patchwork Place. In connection with Patchwork Place, Ms. Barnes made telephone calls after business hours from her home. She also used a portion of a room in her home to store files relating to Patchwork Place and to do some sewing in connection with the business. In late 1976, the petitioners purchased a 1977 Dodge Aspen station wagon for use in connection with Patchwork Place. The Strawberry Patch business area closed in June 1977, and Patchwork Place went out of business at that time. On their 1976 return, the petitioners deducted $250 as a labor expense for Patchwork Place, and for the use of part of their hom in connection with Patchwork Place, they deducted $50. The Commissioner disallowed both deductions. On his 1977 return, the petitioner claimed a deduction for "a shop in the home" with respect to Patchwork Place in the amount of $75.00 and a deduction of $12.50 for labor. On her return for 1977, Ms. Barnes claimed a deduction of $75 for a shop in the home with respect to Patchwork Place and a deduction *391 of $25 for labor. The Commissioner disallowed all such deductions. OPINION The seventh issue for decision is whether the petitioners are entitled to certain deductions claimed in connection with Ms. Barnes' business for 1976 and 1977. With respect to the $250 claimed on the petitioners' 1976 return as a deduction for labor incurred in connection with Patchwork Place, the Commissioner argues that there is no documentary evidence in the record to indicate that any payment was actually made.He also contends that even if such payment was actually made, it was without economic substance and was only intended to bolster the petitioners' claim that Minute Man was a legitimate business.In addition, the Commissioner argues that because the petitioners filed a joint return in 1976, "the effect of the payment is to take money out of one of the petitioners' pockets and place it in another." He further contends that if Minute Man is found to be not an activity engaged in for the purpose of making a profit, the provisions of section 183(b) still allow deductions to the extent of gross receipts. Thus, the petitioners are able to negate the inclusion of the $250 in gross receipts by means of deductions *392 which may not have otherwise been allowable except for section 183(b); the petitioners' taxable income will not be increased by the inclusion of the $250 in gross receipts for Minute Man, while the allowance of the $250 as a deduction for Patchwork Place has the effect of reducing the petitioners' taxable income by $250.The petitioners contend that the inclusion of the $250 as income on Minute Man's Schedule C (Profit or (Loss) from Business or Profession) balances out the deduction taken for Patchwork Place. Both the petitioner and Ms. Barnes testified concerning the work done by the petitioner for the Patchwork Place business and the fact that the $250 was actually paid to him for such work. We found such testimony to be credible, and therefore, we will not disallow the deduction for labor on the ground that no payment was actually made or on the ground that such payment was meant merely to bolster the petitioners' claim that Minute Man was a legitimate business. In support of his contention that the petitioners' Patchwork Place labor deduction should be denied because otherwise they will, through the operation of section 183(b), obtain a double tax benefit by means of such deduction, *393 the Commissioner cites a Memorandum Opinion of this Court, Estate of Nottingham v. Commissioner,T.C. Memo. 1956-281, for the proposition that a sole proprietor cannot deduct amounts paid to himself as compensation for labor unless such amount is restored into income by reporting the compensation. While acknowledging that the petitioners did report the $250 as income on their Schedule C for Minute Man, the Commissioner argues that no income was in effect reported since Minute Man reported a loss in 1976 and section 183(b) allows the petitioners to deduct the losses of Minute Man to the extent of gross receipts reported by Minute Man. The Commissioner contends that allowing the labor deduction would produce a result not contemplated by the Court in Estate of Nottingham.We do not agree. We believe that the $250 was actually paid for services rendered. Such amount was properly reported by the petitioners on the Schedule C for Minute Man. Our holding that Minute Man was an activity not engaged in for the purpose of making a profit means that the petitioners may only deduct the losses of Minute Man to the extent of gross receipts. The Commissioner has cited no authority which supports *394 his contention that the result he advocates is required by statute or case law. The petitioners have carried their burden of proof and established that the $250 was paid for services rendered. Accordingly, we allow them a $250 labor deduction for Patchwork Place in 1976. With respect to the deductions taken by the petitioners for labor in connection with Patchwork Place on their 1977 returns, we sustain the Commissioner's determination. The petitioners have produced no proof with respect to such deductions, and thus, no deduction is allowable. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). We also sustain the Commissioner's determination with respect to the petitioners' claimed home office deductions for 1976 and 1977. Section 280A(a) provides: (a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. The petitioners have failed to prove that Ms. Barnes' use of their residence in connection with her Patchwork Place business qualifies *395 under any of the exceptions, contained in section 280A(c), to the general rule of section 280A(a) disallowing such deductions. Accordingly, we sustain the Commissioner's determination that no deduction is allowable in 1976 or 1977 for a home office in connection with Patchwork Place. Rule 142(a); Welch v. Helvering,supra.
Issue 8. Invesment Tax Credit
FINDINGS OF FACT On their 1976 return, the petitioners claimed an investment tax credit of $366.56. The investment tax credit was claimed for depreciable property used in conjunction with Minute Man and Patchwork Place. The Minute Man property included a 1976 Honda Accord, a router, a sabre saw, and a workmate, all acquired in 1976. The Patchwork Place property included a 1977 Dodge Aspen and some furniture. On his 1977 return, the petitioner claimed an investment tax credit of $26.12. On her 1977 return, Ms. Barnes claimed an investment tax credit of $26.12. The Commissioner disallowed all investment tax credits claimed for both years. OPINION The eighth issue for decision is whether the petitioners are entitled to any investment tax credits for 1976 and 1977, and if so, whether they are liable for investment tax credit recapture *396 in 1977. The Commissioner now contends that the petitioners are entitled to an investment tax credit for 1976 only with respect to 15 percent of the basis of the 1977 Dodge Aspen purchased in 1976 for use in connection with Ms. Barnes' Patchwork Place business. He argues that the automobile was driven a total of approximately 10,000 to 12,000 miles in 1976, and that, on their 1976 return, the petitioners claimed a deduction with respect to the 1977 Dodge Aspen at the standard mileage rate for 1,500 miles. Thus, the Commissioner argues that the automobile was used for personal as well as business purposes and that approximately 15 percent of the total miles driven were related to Ms. Barnes' trade or business.Accordingly, 15 percent of the basis of the 1977 Dodge Aspen, as shown on the petitioners' 1976 return, constitutes section 38 property eligible for the investment tax credit. The Commissioner contends that no investment tax credit is allowable with respect to the items purchased for use in connection with Minute Man because it was not an activity engaged in for the purpose of making a profit and that thus such properties are not depreciable since they were not used in the petitioners' *397 trade or business, nor were they held for the production of income. For such reasons, the Commissioner contends that such properties are not section 38 property eligible for an investment tax credit. He also contends that no investment tax credit is allowable for 1976 with respect to furniture purchased for use in connection with Patchwork Place because the petitioners have failed to sustain their burden of proving that any portion of the basis of such property is section 38 property eligible for the investment tax credit. Finally, the Commissioner argues that no investment tax credit is allowable in 1977 because the petitioners have completely failed to come forward with any evidence to support their claimed investment tax credits in 1977. The petitioners argue that the properties for which investment tax credits were claimed in 1976 and 1977 were actually used in their respective businesses, and they urge us to accept their claims for investment tax credits as reflected by the 1976 and 1977 returns. Except in one minor respect, we sustain the Commissioner's determination. The properties purchased in connection with Minute Man are ineligible for any investment tax credit because *398 no depreciation is allowable with respect to such properties since they were not used in the petitioners' trade or business and were not properties held for the production of income. Sec. 48(a). With respect to the furniture purchased for use in connection with Patchwork Place, the petitioners have the burden of proving that such property was section 38 property, eligible for the investment tax credit. They introduced no evidence concerning the furniture and thus have failed to sustain their burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Similarly, the petitioners have offered no evidence concerning the properties for which they claimed investment tax credits in 1977. We therefore sustain the Commissioner's determination with respect to 1977. In computing the amount of the investment tax credit for 1976 allowable with respect to the 1977 Dodge Aspen used in connection with Patchwork Place, the Commissioner misstated the number of miles claimed on the Schedule C for Patchwork Place. On such schedule, the petitioners claimed a deduction based on the standard mileage rate for 2,500 miles, not 1,500 as the Commissioner contends. Recomputing the Commissioner's *399 calculations using this figure, we find that the petitioners are entitled to an investment tax credit based on 25 percent of the basis of the 1977 Dodge Aspen, and we so hold. We also must decide whether the petitioners are liable for investment tax credit recapture in 1977 in an amount equal to the investment tax credit allowed with respect to the 1977 Dodge Aspen in 1976.In support of his contention that the petitioners are liable for such recapture in 1977, the Commissioner cites section 1.47-1(a), Income Tax Regs. He argues that such section provides that if, during the taxable year, any section 38 property, the basis of which was taken into account in computing the taxpayer's qualified investment, is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the estimated useful life which was taken into account in computing such qualified investment, then the credit earned for the credit year should be recaptured. In determining the amount of the recapture, the actual useful life of the property shall be substituted for the estimated useful life of the property that was taken into account originally in computing the qualified *400 investment. The 1977 Dodge Aspen was placed in service with respect to Patchwork Place in October 1976, and Patchwork Place ceased operations in June 1977; Ms. Barnes was not thereafter involved in any trade or business for 1977. Accordingly, the Commissioner contends that the Dodge Aspen ceased to be section 38 property with respect to the petitioners in June 1977 when Patchwork Place ceased operations. Since the actual use of the property was less than the original estimated useful life, 3 years, and is less than 1 year, the petitioners are subject to recapture in 1977 for all the investment tax credit allowed in 1976 with respect to the Dodge Aspen. Sec. 1.47-1, Income Tax Regs. The petitioners do not argue that they are not liable for investment tax credit recapture in 1977. Accordingly, we sustain the Commissioner's determination. Rule 142(a); Welch v. Helvering,supra.
Issue 9. Farm Expenses
FINDINGS OF FACT During the years in issue, the petitioners owned a 150-acre farm in Brunswick, Neb., which the petitioner's brother farmed under a sharecropper arrangement. While in Nebraska, the petitioner stayed with relatives and ate his meals at the homes of relatives.On their *401 1976 return, the petitioners deducted $854 for travel in connection with the farm. The Commissioner disallowed such deduction in full. By check dated January 10, 1976, the petitioner paid Hazel and Bruce Rehberg $3,000. The check bore the notation "Interest on farm." The petitioners deducted such amount on their 1976 return as a farm expense. The Commissioner disallowed such deduction in full. On their 1976 return, the petitioners reported $1,200 as income from pasture rent, and they deducted $200 as land clearing expenses. They did not pay for the land clearing; rather, the petitioner's brother paid the $200 and deducted such expense from the pasture rent. The Commissioner disallowed the $200 deduction for land clearing. During 1977, the petitioner wrote the following checks: Notation on
Date
Amount
Payee
Check
May 4, 1977
$30
Ralph S. Kryger
Exam Abstract
May 4, 1977
37
Schacht Abstract
Abstracting
& Title Co.
The petitioner also paid $62 to Schacht Abstract & Title Co. for abstracting on or about August 6, 1977, and he paid the law firm of Tyner & Tyner $95 in late 1977 for services in connection with real property in Nebraska. By check dated August 31, 1977, the petitioner paid Gordon C. *402 Tyner $625; the check bore the notation "Hathaway fee." During 1977, Mr. Tyner provided legal services to the petitioner in connection with his divorce. On their 1977 returns, the petitioners deducted amounts for legal fees, travel, and miscellaneous expenses in connection with the farm. The Commissioner disallowed all such deductions in full. OPINION The ninth issue for decision is whether the petitioners are entitled to various deductions in 1976 and 1977 for farm related expenses. With respect to the petitioners' claimed travel expenses in connection with their ownership of the farm, the Commissioner contends that such expenses are not deductible in 1976 because such expenses were primarily personal in nature and because the petitioners have failed to satisfy the substantiation requirements of section 274(d). For 1977, he argues that the petitioners have failed to introduce any evidence to substantiate the petitioner's travel expenses. The petitioners argue that the primary purpose of the petitioner's travel to Nebraska was in connection with his management of the farm property. In order to substantiate their farm expenses, the petitioners submitted a "farm log" which listed *403 various farm expenses for 1976. They also submitted two cancelled checks written in 1976 to airlines bearing the notation "To Neb." Neither the farm log nor the cancelled checks establish what was the petitioner's primary motivation in traveling to Nebraska in 1976. His testimony concerning such expenses was vague and conclusory. In addition, part of the petitioner's travel expenses was for meals and lodging. He testified that although he stayed with relatives while in Nebraska, he nevertheless "paid his own way" and paid his relatives certain amounts for his food and lodging. Based on the evidence in the record in this case, we conclude that the petitioners have failed to prove that personal reasons were not the primary motivation for the petitioner's 1976 trips to Nebraska. Thus, the cost of traveling to Nebraska on such trips is a nondeductible personal expense. Sec. 1.162-2(b)(1), Income Tax Regs. With respect to the petitioners' claimed travel expenses in 1977, they have introduced no evidence concerning such expenses, and thus, they have clearly failed to sustain their burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). We also conclude that the claimed *404 cost of the petitioner's meals and lodging while in Nebraska for both 1976 and 1977 are nondeductible for the reason that the petitioners have failed to satisfy the substantiation requirements of section 274(d). The petitioner's testimony concerning such expenses was neither credible nor plausible. We are not bound to accept testimony at face value, even if uncontroverted, if it is inherently improbable or manifestly unreasonable. Quock Ting v. United States,140 U.S. 417, 420-421 (1891); Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court; Boyett v. Commissioner,204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court. The petitioners have also failed to sustain their burden of proof with respect to the $3,000 interest expense claimed on their 1976 return. The petitioner's testimony on this issue was simply not believable. He testified that he did not pay any principal on any indebtedness to the Rehbergs in 1976, that he owed the Rehbergs "somewhere around" $20,000 in 1976, and that it had been agreed between himself and the Rehbergs that the $3,000 payment in 1976 was for "past and advanced interest." On the *405 record before us, the petitioners have failed to show that the $3,000 payment to the Rehbergs in 1976 was a deductible interest expense. Rule 142(a); Welch v. Helvering,supra.
With respect to the deduction for land clearing claimed on the petitioners' 1976 return, the Commissioner argues that the petitioners did not themselves pay the $200; rather, the petitioner's brother actually paid the $200. He also contends that the petitioner submitted backdated receipts from his brother in an attempt to prove such expense and that the petitioner's testimony concerning the land clearing expense was not reliable. The petitioners contend that they properly reported the $200 as a deductible farm expense and that they reported the full $1,200 as pasture rent even though the petitioner's brother did not pay him the full $1,200. On this issue, we believe that the petitioners have sustained their burden of proof.We are hesitant to rely solely on the farm "records" submitted by the petitioner. However, the petitioner's testimony concerning the land clearing expense comports with what was reported on the petitioners' 1976 return. Thus, we allow a deduction in 1976 of $200 for land clearing. There *406 remains for consideration various deductions taken on the petitioners' 1977 returns as farm expenses. Such expenses include amounts paid for legal fees, "abstracting," and miscellaneous expenses. The Commissioner argues that the petitioners' legal expenses, as well as amounts paid for abstracting, are nondeductible capital expenditures. He also argues that the petitioners have failed to sustain their burden of proof with respect to such expenses, and with respect to their claimed miscellaneous expenses. The petitioners contend that the expenses in question were directly related to the farm and were not capital in nature. The petitioner's testimony and the evidence submitted concerning these expenses constitute a meager record. The petitioner's testimony and the petitioners' arguments on brief were vague and conclusory. On such record, we hold that the petitioners have failed to carry their burden of proof, and we sustain the Commissioner's determination in this respect. Rule 142(a); Welch v. Helvering,supra.
Issue 10. First Kensington Loss
FINDINGS OF FACT In 1971, the petitioners transferred $1,000 to First Kensington Corporation (First Kensington), which was deposited in *407 a monetary fund in the form of a trust account. The money advanced was to be used by First Kensington as an unrestricted investment fund from December 31, 1971, until December 31, 1976, and earnings were to be split between the investor and First Kensington, the trustee. At some point in time, First Kensington filed for bankruptcy and the petitioners filed therein as creditors. On their 1976 return, the petitioners claimed a § 1,000 long-term capital loss in connection with First Kensington. The Commissioner disallowed such deduction. OPINION The tenth issue for decision is whether the petitioners are entitled to a long-term capital loss deduction in connection with a monetary fund for 1976. The Commissioner argues that the petitioners have failed to show any fixed or identifiable event which would evidence a closed and completed transaction in 1976. Thus, he contends that the petitioners have failed to show that any loss in connection with First Kensington was actually sustained in 1976. The petitioners contend that their investment in First Kensington became worthless during 1976 and that they properly claimed a loss in that year. At some time, First Kensington filed for bankruptcy, *408 and the petitioners filed as creditors in such proceeding. The petitioner testified that First Kensington had turned out to be a fraud, but he did not testify as to whether the bankruptcy proceeding involving First Kensington had been terminated. Based on such facts, we must conclude that the petitioners have failed to establish that they sustained a loss in 1976. See Young v. Commissioner,123 F.2d 597 (2d Cir. 1941), affg. a Memorandum Opinion of this Court; Williamson Mining Co. v. Commissioner,5 B.T.A. 814 (1926). Issue 11. Villas West Loss
FINDINGS OF FACT In 1971, the petitioners invested $5,000 in Villas West Ltd. (Villas West), a limited partnership involved in the operation of a mobile home park in Georgia. Villas West was somehow associated with First Kensington.In 1972, the petitioners reported a loss from the operation of Villas West in the amount of $406. For 1973, 1974, and 1975, they reported losses of $315, $48, and $449, respectively, from the operation of Villas West. Their Schedule K-1 (Partner's Share of Income, Credits, Deductions, etc.) for 1975 showed a capital account at the end of the year of zero. On their two amended returns for 1976, the petitioners *409 claimed a long-term capital loss in connection with Villas West of $5,000 on each amended return. On his 1977 return, the petitioner claimed a long-term capital loss of $5,000 in connection with Villas West. The Commissioner disallowed all such deductions. OPINION The eleventh issue for decision is whether the petitioners are entitled to a long-term capital loss deduction in connection with a limited partnership for 1976 or 1977. The Commissioner argues that the petitioners have offered no documentary evidence or testimony which would establish the existence of a closed and completed transaction, or a fixed, identifiable event, which shows that any loss was actually sustained in 1976 or 1977. The Commissioner also argues that the petitioners have failed to establish that they had any basis in Villas West in 1976 or 1977. In support of such argument, he points to the fact that the petitioners' Schedule K-1 for 1975 shows that their capital account in the partnership was zero by the end of 1975. The petitioners recognize that their basis should be reduced by the losses taken on their returns for 1972, 1973, and 1974, but they argue that the 1975 Schedule K-1 should be disregarded *410 because it does no accurately reflect their remaining basis in Villas West. Because the petitioners have failed to prove that they had any basis in Villas West in either 1976 or 1977, we sustain the Commissioner's determination with respect to this issue. Other than the petitioner's testimony, there is no evidence that the petitioners had any basis in Villas West in 1976 or 1977. In addition, the only documentary evidence in the record specifically contradicts the petitioners' contention, and they have not shown sufficient reason to disregard such evidence. Sec. 165(b); Rule 142(a); Welch v. Helvering,supra.
Issue 12. American Buying Loss
FINDINGS OF FACT Prior to 1974, the petitioners invested money in American Buying Service (American Buying). American Buying was a franchise distributorship. On both of the 1976 amended returns which the petitioners filed, they deducted $2,774 as a loss from their investment in American Buying. On his 1977 return, the petitioner claimed a long-term capital loss of $2,774 in connection with American Buying. The Commissioner disallowed all such deductions. OPINION The twelfth issue for decision is whether the petitioners are entitled to a long-term *411 capital loss deduction in connection with a franchise distributorship for 1976 or 1977. The Commissioner contends that the petitioners have failed to prove a loss evidenced by a closed and completed transaction, fixed by identifiable events, and actually sustained in the taxable year claimed. He argues that the petitioner's testimony, "It was a franchise distributorship that went bankrupt, and our investment was lost" in that period, is too vague to establish an identifiable event or a closed and completed transaction which would establish that any loss with respect to American Buying was actually sustained in 1976 or 1977. The petitioners contend that American Buying was a franchise distributorship that "failed" in 1976. They recognize that their claimed original investment of $3,467.00 may have to be reduced by $1,093.40, which was the amount of depreciation claimed in prior years. Thus, on brief, they argue for recognition of a $2,373.60 long-term capital loss. On this issue, we sustain the Comissioner's determination and disallow any loss claimed with respect to American Buying for 1976 or 1977. The petitioners have failed to establish that they actually sustained any loss *412 in 1976 or 1977 in connection with American Buying. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933); Boehm v. Commissioner,146 F.2d 553 (2d Cir. 1945), revg. and remanding on another issue a Memorandum Opinion of this Court, affd. 326 U.S. 287 (1945). Issue 13. Miscellaneus Deductions
FINDINGS OF FACT On their 1976 return, the petitioners claimed a miscellaneous itemized deduction for professional dues, publications, and telephone expenses (basis monthly service charges and long distance) in the amount of $670. The Commissioner disallowed $483 of such amount. He allowed the petitioners a deduction of $187, which represents the cost of a paging service and one-half of the cost of the petitioners' telephone expenses. The petitioners used their telephone for personal as well as business purposes.The petitioners subscribed to a number of publications. The record indicates that the petitioners paid $55 for one subscription, but it does not indicate what amount was paid for other subscriptions in 1976. In 1976 and 1977, the petitioners reported no dividend or interest income. During 1976, they did report $19,857.50 in short-term capital losses and $60,265.00 in long-term capital *413 gains from trading is silver or silver futures. On his 1977 return, the petitioner claimed a deduction in the amount of $61.62 for dues. He also claimed a deduction of $72.96 for professional equipment and a deduction of $251.46 for tax preparation and publications. On her 1977 return, Ms. Barnes claimed a deduction of $25.38 for professional dues and publications and a deduction of $30.04 for professional equipment. She also claimed a deduction of $103.54 for tax preparation and publications. The Commissioner disallowed all such deductions. OPINION The thirteenth issue for decision is whether the petitioners are entitled to various miscellaneous deductions for 1976 and 1977. The Commissioner argues that the petitioners have failed to show that the expenses in question are deductible under section 162 as ordinary and necessary expenses paid or incurred in the taxpayer's trade or business or that such expenses are deductible under section 212 as ordinary and necessary expenses paid or incurred during the taxable years for the production or collection of income, or for the management, conservation, or maintenance of properties held for the production of income. He also contends that *414 some of the expenses are nondeductible personal expenses under section 262. The petitioners maintain that the expenses in question are deductible either as ordinary and necessary business expenses or as expenses incurred for the management, conservation, or maintenance of properties held for the production of income. On the record before us in this case, we sustain the Commissioner's determination as to these various expenses as set out in our findings of fact. The petitioner's testimony concerning such expenses was vague and conclusory. The petitioners have failed to carry their burden of proof with respect to the deductibility of such expenses. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). In addition, many of the expenses for which the petitioners are claiming deductions are obviously personal expenses, nondeductible under section 262. The petitioner's testimony at trial and the petitioners' arguments in their brief demonstrate that in claiming deductions they have refused to differentiate between personal expenses and business expenses or expenses incurred in the management, conservation, or maintenance of properties held for the production of income. Thus, the petitioners *415 have failed to prove that the expenses in question are not personal expenses nondeductible under section 262. Rule 142(a); Welch v. Helvering,supra.
Issue 14. Addition to Tax--Section 6653(a)
OPINION The final issue for decision is whether the petitioners in 1976 and the petitioner in 1977 are liable for additions to tax under section 6653(a). The Commissioner has conceded that Ms. Barnes is not liable for the addition to tax under section 6653(a) for 1977. Section 6653(a) provides for an addition to tax if "any part of any underpayment * * * of any [income] tax * * * is due to negligence or intentional disregard of rules and regulations." The petitioners bear the burden of proving that the additions to tax do not apply. Rule 142(a); Bixby v. Commissioner,58 T.C. 757, 791 (1972). The petitioners presented no evidence to prove that the underpayments in this case were not due to negligence or intentional disregard of rules and regulations.In fact, the record is replete with instances in which the petitioners for 1976 and the petitioner for 1977 claimed deductions to which they were clearly not entitled. Such record displays a strong propensity for claiming deductions without *416 any effort to determine whether there were any grounds for such claims. Accordingly, on the record before us, we find that the petitioners for 1976 and the petitioner for 1977 have failed to carry their burden, and we sustain the determination of the Commissioner as to the additions to tax. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Kenneth J. Masat, docket No. 11192-81; Carole Magaha Barnes, Formerly Known as Lana C. Masat, docket No. 11560-81.↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue. ↩
3. At trial and in their brief, the petitioners contend that they should be allowed increased deductions for certain items. However, they did not introduce sufficient evidence to support such claims. Accordingly, we hold that they have failed to satisfy their burden of proof with respect to such claims. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933); see also Aero Rental v. Commissioner,64 T.C. 331 (1975); Barber-Greene Americas, Inc. v. Commissioner,35 T.C. 365 (1960); Ruge v. Commissioner,26 T.C. 138↩ (1956).
4. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
5. In reaching this conclusion, we are aware of the decision in Baker v. United States,575 F. Supp. 508 (N.D. Ga. 1983). However, as stated in Webster v. Commissioner,T.C. Memo. 1983-682↩, on appeal (11th Cir., March 8, 1984), we respectfully decline to follow the district court's holding.